Filed 3/24/26  P. v. Sepulveda CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G064094 |
|      v. | (Super. Ct. No. 12NF0846) |
| JESUS SEPULVEDA, JR., | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Lance P. Jensen, Judge. Affirmed. Request for Judicial Notice. Granted.

Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

In 2014, a jury convicted appellant Jesus Sepulveda, Jr. of first degree special circumstances murder by means of personally discharging a firearm. In so doing, the jury rejected Sepulveda's claim he shot the victim in self-defense or the defense of others.

In 2024, the trial court conducted an evidentiary hearing on Sepulveda's petition for resentencing under Penal Code section 1172.6.[1] At the hearing, Sepulveda sought to introduce new evidence he acted in the defense of others. The court denied the request and ultimately found beyond a reasonable doubt that Sepulveda was guilty of murder under current law for personally killing the victim with malice. It therefore denied his petition for resentencing.

On appeal, Sepulveda contends the trial court erred in rejecting his new evidence on the defense of others. We disagree and affirm the court's denial order.

FACTUAL AND PROCEDURAL BACKGROUND

I.

THE TRIAL EVIDENCE

Late one night in 2012, Sepulveda, codefendant Javier Lopez, and two other men confronted Juan "Lefty" Morales and Angel Bravo outside the Anaheim apartment complex where Morales and Bravo lived. Morales was intoxicated and had been hitting an axe against a tree earlier that evening.

---

[1] That section was originally housed in Penal Code section 1170.95, but it was subsequently renumbered without substantive change as Penal Code section 1172.6. (Stats. 2022, ch. 58, § 10.) We will refer to the latter section for ease of reference. Unless noted otherwise, all further statutory references are to the Penal Code.

But according to Bravo, Morales had put the axe away by the time Sepulveda's group arrived.

During the encounter, Sepulveda stated, "This is Westside" and asked Morales where he was from. Morales said "we live here," "fuck Westside." In response, Sepulveda pulled out a gun and shot Morales in the chest. Sepulveda and his cohorts then pummeled Morales and Bravo before fleeing the scene. Bravo called 911, but Morales died at the scene.

Sepulveda testified to a very different version of events. He claimed Morales still had the axe in his hands when he and his cohorts confronted him. Sepulveda did not want to cause trouble; he simply wanted Morales to drop the axe and go home. However, things got heated when Lopez made fun of the fact Morales has no left arm. In response, Morales said, "Oh, yeah, mother fucker, I'm going to show you what a one hand mother fucker can do." Morales then started walking toward Lopez and Sepulveda, while making quick swipes with the axe. When Morales got close to them, Sepulveda pulled his gun and shot him because he feared for his life.

At Sepulveda's request, the trial court instructed the jury on both self-defense and the defense of others. The court also instructed on imperfect self-defense as a theory on the lesser included offense of voluntary manslaughter. However, the jury convicted Sepulveda of first degree premeditated murder and found true the special circumstances allegation he killed Morales to further the activities of a criminal street gang. (§§ 187, subd. (a), 190.2, subd. (a)(22).) In addition, the jury found Sepulveda committed street terrorism, acted for the benefit of a criminal street gang, and caused Morales's death by personally and intentionally discharging a

firearm. (§§ 186.22, subds. (a), (b)(1), 12022.53, subd. (d)). The trial court sentenced Sepulveda to life in prison without parole, plus 25 years.[2]

## II.

### THE RESENTENCING PROCEEDINGS

In 2022, Sepulveda petitioned for resentencing pursuant to section 1172.6. The trial court issued an order to show cause and held an evidentiary hearing, at which it considered the evidence from the underlying trial. At the hearing, defense counsel conceded that Sepulveda shot and killed Morales and that the jury had rejected Sepulveda's claims of self-defense and defense of others. Nevertheless, counsel sought to introduce new evidence that Sepulveda acted in the defense of others when he shot Morales.

To that end, defense counsel made an offer of proof that, if called to testify at the hearing, codefendant Lopez would testify Sepulveda shot Morales just as Morales was getting ready to swing his axe at Lopez.[3] Defense counsel argued this testimony was relevant because it would create a reasonable doubt whether Sepulveda was liable for murder under current law. More particularly, counsel argued Lopez's proposed testimony would support a finding Sepulveda was not guilty of any crime because he acted in

---

[2] The jury convicted codefendant Lopez of street terrorism and voluntary manslaughter with an attendant gang enhancement, for which he was sentenced to 16 years in prison.

[3] At the original trial, Lopez exercised his Fifth Amendment right not to testify. Defense counsel's offer of proof was based on an interview a defense investigator had conducted with Lopez in prison. We grant Sepulveda's unopposed request to judicially notice the investigator's report of the interview, which the trial court considered but did not formally admit into evidence at the resentencing hearing.

defense of another, or he was only guilty of voluntary manslaughter because he acted in imperfect defense of another.

The trial court disagreed. It ruled Lopez's proposed testimony was irrelevant because the jury had rejected Sepulveda's claim of defense of others, and the trial evidence established beyond a reasonable doubt that Sepulveda acted with malice when he fatally shot Morales. Therefore, the court denied Sepulveda's petition for resentencing.

## DISCUSSION

Sepulveda contends the trial court erred in denying his request to present testimony from Lopez because it was relevant to whether he acted with malice in killing Morales. We disagree.

Sepulveda's claim is grounded in Senate Bill No. 1437. (2017–2018 Reg. Sess.; see Stats. 2018, ch. 1015, §§ 2–4 (Senate Bill 1437).) That law narrowed the scope of vicarious liability for the crime of murder by eliminating the natural and probable consequences theory for that offense and limiting the scope of the felony-murder rule. (*Ibid.*; §§ 188, subd. (a)(3); 189, subd. (e)(1)–(3).) These changes apply exclusively to accomplices. "The legislature eliminated murder liability only for some convicts 'who were neither the actual killers nor intended to kill anyone.'" (*People v. Mares* (2024) 99 Cal.App.5th 1158, 1166.)

Senate Bill 1437 also led to the enactment of section 1172.6, which is the procedural mechanism for challenging a murder conviction based on vicarious liability. To obtain relief under that section, the defendant must show 1) he was prosecuted for murder under the felony-murder rule, the natural and probable consequences doctrine, or some other theory under which malice was imputed to him based solely on his participation in a crime, 2) he was convicted of murder, and 3) and he would not be liable for murder

5

today because of how Senate Bill 1437 changed the law regarding that offense. (§ 1172.6, subd. (a).)

If the defendant makes a prima facie showing for relief, the trial court is required to issue an order to show cause and conduct an evidentiary hearing. (§ 1172.6, subds. (c), (d).) At the hearing, the prosecution must prove beyond a reasonable doubt the defendant is ineligible for resentencing because his conduct did in fact rise to the level of murder as redefined by Senate Bill 1437. (§ 1172.6, subd. (d)(3).) Both the prosecutor and the defendant may offer new evidence on that issue. (*Ibid*.) However, the admission of evidence is generally governed by the Evidence Code, which precludes the introduction of irrelevant evidence. (§ 1172.6, subd. (d)(3); Evid. Code, § 350.)

In this case, Sepulveda was not convicted of murder based on a theory of imputed malice. The jury convicted him of first degree premeditated murder, which requires the intent to kill, i.e., express malice. The jury also found Sepulveda caused Morales's death by personally and intentionally discharging a firearm. In other words, Sepulveda's murder conviction was based on his own malice and his own actions. And in denying Sepulveda's petition for resentencing, the trial court found beyond a reasonable doubt he personally killed Morales with malice. Sepulveda does not dispute there is substantial evidence to support the court's finding in that regard.

Instead, Sepulveda argues the trial court should have allowed him to present new evidence from Lopez to create reasonable doubt as to whether he acted with malice. In so arguing, Sepulveda correctly points out that, under the doctrine of imperfect defense of another, an actual belief in the need to protect a third party from imminent deadly harm negates malice and reduces a killing from murder to voluntary manslaughter, even if the

6

defendant's belief is objectively unreasonable. (*People v. Trujeque* (2015) 61 Cal.4th 227, 270–271; *People v. Randle* (2005) 35 Cal.4th 987, 997, overruled on another ground in *People v. Chun* (2009) 45 Cal.4th 1172, 1200–1201.) So, if Sepulveda killed Morales in the actual but unreasonable belief Morales was going to kill Lopez, he would be guilty of manslaughter, not murder. (*Trujeque,* at pp. 270–271; *Randle*, at p. 997.)

However, Senate Bill 1437 was not intended to allow defendants to relitigate factual issues that were previously decided against them in their underlying trials. (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 458; *People v. Farfan* (2021) 71 Cal.App.5th 942, 947; *People v. Allison* (2020) 55 Cal.App.5th 449, 461, disapproved on other grounds in *People v. Strong* (2022) 13 Cal.5th 698, 718, fn. 3.) Rather, Senate Bill 1437 was designed to allow defendants to seek relief if the legal basis for their murder conviction was rendered invalid "because of" the changes ushered in by that bill. (§ 1172.6, subd. (a)(3).) As explained above, those changes related to the natural and probable consequences doctrine, the felony-murder rule, and any other theory of imputed malice. Accordingly, the scope of an evidentiary hearing under section 1172.6 is limited to issues related to those theories. (*People v. Rodriguez, supra*, at p. 457; *Gomez v. Superior Court* (2024) 100 Cal.App.5th 778, 787.)

Because Sepulveda was not convicted on a theory of imputed malice, Lopez's proposed testimony regarding imperfect defense was simply not relevant in the context of the resentencing hearing. Although that testimony relates to the issue of malice, that was true *before* Senate Bill 1437 was enacted; the testimony did not become relevant *because of* the changes brought about by that new law. Accordingly, the trial court did not err in excluding Lopez's proposed testimony at the evidentiary hearing on

7

Sepulveda's petition. (Cf. *People v. Mares, supra,* 99 Cal.App.5th at p. 1168 [a murder defendant seeking resentencing on the theory he was misidentified as the actual shooter would not be entitled to relief because the misidentification defense was not made available to him *because of* the changes made by Senate Bill 1437].)

In arguing the trial court erred in excluding Lopez's proposed testimony, Sepulveda also contends the testimony was not barred by the doctrine of collateral estoppel. However, given our conclusion the testimony was properly excluded as irrelevant, we need not consider that argument. Suffice to say, the trial court properly adjudicated Sepulveda's petition based on the evidence presented at his underlying trial. We discern no basis for disturbing the court's rulings.[4]

---

[4] We note our ruling and disposition does not foreclose Sepulveda from filing a petition for a writ of habeas corpus based on the discovery of purportedly new evidence. (See § 1473.) We take no position, however, on whether such a petition may ultimately prove successful.

## DISPOSITION

The trial court's postjudgment order denying Sepulveda's petition for resentencing is affirmed.


GOODING, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


MOORE, J.